1  Joseph M. Preis, Esq. (State Bar No. 212998)
2  jpreis@gaplegal.com
   Robert F. Muth, Esq. (State Bar No. 268268)    2011 JUL 14  PH 2:51
3  rmuth@gaplegal.com
4  Godes & Preis, LLP
   8001 Irvine Center Drive, Suite 1420
5  Irvine, California 92618
6  Telephone:  (949) 468-0051
   Facsimile:  (949) 872-2281
7
   Attorneys for Plaintiff
8  PISSED AWAY N6VC, LLC

9

10              UNITED STATES DISTRICT COURT

11         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12                                      11 CV 1563  H  CAB

13  PISSED AWAY N6VC, LLC, a        Case No.
    Washington Limited Liability
14  Company,                        COMPLAINT FOR:

15              Plaintiff,          1. FRAUD IN THE INDUCEMENT;
                                    2. NEGLIGENT
16         vs.                         MISREPRESENTATION;
                                    3. BREACH OF CONTRACT
17  WILLIAM E. STRICKER, an
    individual;                     DEMAND FOR JURY TRIAL
18
                Defendants.
19

20

21       By way of this Complaint, Plaintiff Pissed Away N6VC, LLC ("Plaintiff"), avers

22  against Defendant William E. Stricker ("Defendant") as follows:

23                        **NATURE OF ACTION**

24       1.    Defendant, a self described avid warbird collector for over 20 years,

25  fraudulently induced Plaintiff to purchase a 1945 Grumman TBM-3E Avenger Aircraft,

26  tail number N6VC ("Aircraft") at a price well above market, by intentionally

27  misrepresenting that it was a "one of a kind" perfect airplane that had undergone a

28  complete ground-up restoration to include an overhaul of the engine and propeller, and

                                    1                    **ORIGINAL**

1 that every item was either new or overhauled including wiring, lines, hoses and
2 accessories. In reliance on the foregoing representations and others, the parties entered
3 into an agreement whereby Defendant agreed, *inter alia*, to give the Aircraft a "fresh
4 annual inspection" and to "ensure flight worthiness" prior to delivery.

5     2.    Despite and in stark contrast to the Defendant's representations, the
6 Aircraft was in extremely poor condition and was neither flight worthy nor capable of
7 becoming flight worthy in its delivered state without extremely costly and time-
8 consuming repairs. When confronted with the foregoing, Defendant represented that he
9 was "very sorry" and that he would "correct any problems". As was the case with his
10 pre-purchase representations concerning the condition of the Aircraft and his agreement
11 to "ensure flight worthiness", Defendant's representations that he would "correct any
12 problems" have likewise proven to be untrue.

13 **PARTIES**

14     3.    Plaintiff is a limited liability company organized and existing under the
15 laws of the State of Washington, and is registered to do business in the State of
16 California. It has two members, one of whom is a citizen of Washington and the other
17 a citizen of California.

18     4.    Defendant is an individual and a citizen of the State of Missouri.

19 **JURISDICTION**

20     5.    This Court has jurisdiction over the subject matter of this action pursuant
21 to Title 28, United States Code § 1332 (diversity), because complete diversity exists in
22 that the parties are citizens of different states and the matter in controversy exceeds the
23 sum or value of $75,000, exclusive of interest and costs.

24 **VENUE**

25     6.    Venue is proper in this Court because a substantial part of the events or
26 omissions on which Plaintiff's claims are based occurred in this District and the
27 property that is the subject of this action, the Aircraft, is located in this District, as
28 provided in Title 28, United States Code §1391(a)(2).

# FACTUAL ALLEGATIONS

## Defendant's Misrepresentations Concerning the Condition of the Aircraft

7.      In October 2010, Plaintiff and Defendant entered into negotiations for Plaintiff's purchase of Defendant's Aircraft, during which time Defendant made numerous misrepresentations concerning its condition, for the purpose of inducing Plaintiff to make the purchase. Among other things, Defendant represented that he had been a warbird collector for 20 plus years, and that he had the best available aircraft. With respect to the Aircraft at issue, Defendant represented that it was the only completely restored TBM ever done to 100 point specs, that it had undergone a complete ground-up restoration, that the engine and propeller had been overhauled, that every item was either new or overhauled including the wiring, lines, hoses and accessories, and that more than $1.3 million in the restoration of the aircraft.

## The Parties' Negotiations

8.      Based on, *inter alia*, Defendant's representations identified in paragraph 7 above, Plaintiff and Defendant started negotiating the sale. During the course of their negotiations, Defendant admitted that the $680,000.00 asking price was "higher than most TBM's are worth," but insisted that the Aircraft was truly one of a kind in the world of otherwise "mostly-crappy" TBM's. Defendant reiterated that the Aircraft had been completely restored and was a "deal" at the asking price.

## The Contract

9.      On or about October 15, 2010, the parties entered into an aircraft purchase agreement ("Agreement") whereby Defendant agreed to, *inter alia*, "give the Aircraft a fresh annual inspection, prepare the aircraft for departure, clean the aircraft, start the annual, swing the gear, swing the wings, pre-oil, oil and de-oil and conduct other repairs as necessary to fix broken non-functional equipment and *to ensure flight worthiness*." (Emphasis added.)  A true and correct copy of the parties' contract is attached as Exhibit A hereto.

## The True Condition Upon Delivery

10. Upon arrival, the delivery pilot relayed that he had significant difficulties with the Aircraft. Further, it was determined that the Aircraft had significant structural, mechanical and electrical issues which made it not flight worthy and incapable of becoming flight worthy in its delivered state. Among other things, it was discovered that the elevator cables were not properly secured, that the elevator rear sector nuts were ready to fall off, that the rubber hoses were significantly out of date, that many access panels had not been opened in years, indicating that a proper annual inspection had not been performed, that power wires that controlled the turning and banking of the Aircraft were disconnected and hanging loose, that the directional gyro was not functioning, that a suction relief valve was missing, that the carburetor air temperature was not working, that the GPS was inoperable, that the vertical and horizontal stabilizers were infested with bird's nests and feces which corrode metal, that the flight controls were stiff and unresponsive, that all bearings had to be re-lubed, that the control surfaces had to be re-covered, that there were abnormal oil leaks, that the pushrod tube hoses and valve tappet guide housings were leaking, that nut plates were missing throughout, that the landing gear struts had not been overhauled, and that the main landing gear struts and brakes were leaking.

11. The condition of the Aircraft as described in the preceding paragraph was not only in sharp contrast to Defendant's representations, but also demonstrated that Defendant did not ensure flight worthiness as agreed. In addition, Defendant's misrepresentations, upon which Plaintiff relied, significantly endangered the lives of the delivery pilot and all those in the Aircraft's flight path.

12. When confronted, Defendant repeatedly apologized to Plaintiff and made assurances that he would do "what it takes to correct any problems." Notwithstanding his assurances, Defendant failed to do so.

13. As a result of the multitude of structural, mechanical and electrical issues with the Aircraft as delivered, Plaintiff, at significant cost well in excess of the

1  jurisdictional limits of this Court, had to engage two mechanics full-time for

2  approximately three months in order to place the Aircraft in the condition that

3  Defendant represented it to be in.

4  **FIRST CLAIM FOR RELIEF**

5  **FRAUDULENT INDUCEMENT**

6      14.   Plaintiff incorporates averments set forth in paragraphs 1 – 13, above, as if

7  set forth in full herein.

8      15.   As averred herein, prior to the parties' entering into the purchase

9  agreement, Defendant represented to Plaintiff, *inter alia*, that the Aircraft had

10 undergone a complete ground-up restoration, that the engine and propeller had been

11 overhauled, that every item was either new or overhauled, including the wiring, lines,

12 hoses and accessories.

13     16.   Plaintiff is informed and believes and, based thereon avers, that these

14 representations were false and were made by Defendant for the sole purpose of

15 inducing Plaintiff to agree to purchase the Aircraft.

16     17.   Plaintiff is informed and believes, and based thereon avers, that when

17 Defendant made these representations to Plaintiff, he knew that they were false and

18 made them with the intent to deceive and defraud Plaintiff and to induce Plaintiff to

19 purchase the Aircraft.

20     18.   At the time these representations were made by Defendant, Plaintiff did

21 not know that they were false and reasonably relied upon them.

22     19.   As a proximate result of the fraudulent conduct averred above, Plaintiff

23 has been damaged in that the Aircraft was not worth the amount paid and significant

24 remediation was required, all at Plaintiff's expense, in order to place the Aircraft in the

25 condition that Defendant represented, in an amount well in excess of the jurisdictional

26 limits of this Court, to be proven at trial.

27     20.   Plaintiff is informed and believes, and based thereon avers, that the

28 aforementioned acts of Defendant were willful, wanton, and malicious in that

1  Defendant misrepresented material facts with the deliberate intent to induce Plaintiff to
2  purchase his Aircraft and to earn a profit from Plaintiff's ignorance of the true facts.
3  Plaintiff is therefore entitled to punitive and exemplary damages from Defendant.

### SECOND CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

6      21.   Plaintiff incorporates averments set forth in paragraphs 1-20, above, as if
7  set forth in full herein.

8      22.   As averred herein, prior to the parties' entering into the Agreement,
9  Defendant communicated to Plaintiff that the Aircraft had undergone a complete
10  ground-up restoration, that the engine and propeller had been overhauled, that every
11  item was either new or overhauled including the wiring, lines, hoses, and accessories.

12      23.   Plaintiff is informed and believes and, based thereon avers, that this
13  information was false and was made by Defendant, in the course of selling his Aircraft
14  to Plaintiff.

15      24.   Plaintiff is informed and believes and, based thereon avers, that Defendant
16  supplied Plaintiff with the above information which was false when he communicated it
17  to Plaintiff and did not exercise reasonable care or competence in obtaining or
18  communicating it to Plaintiff.

19      25.   At the time these representations were made by Defendant, Plaintiff did
20  not know that they were false and reasonably relied upon them.

21      26.   Plaintiff is informed and believes and, based thereon avers, that Defendant
22  was the experienced owner of the Aircraft and knew its true condition when he
23  communicated the above information to Plaintiff, and Plaintiff was therefore justified in
24  relying on the above information.

25      27.   As a proximate result of the conduct described above, Plaintiff has been
26  damaged in that the Aircraft was not worth the amount paid and significant remediation
27  was required, all at Plaintiff's expense, in order to place the Aircraft in the condition
28  that Defendant represented, in an amount well in excess of the jurisdictional limits of

1 this Court, to be proven at trial.

## THIRD CLAIM FOR RELIEF
## BREACH OF CONTRACT

28.   Plaintiff incorporates averments set forth in paragraphs 1-27, above, as if set forth in full herein.

29.   On or about October 15, 2010, Plaintiff entered into the Agreement with Defendant to purchase the Aircraft for $680,000.

30.   Pursuant to the Agreement, Defendant agreed to, *inter alia*, "give the Aircraft a fresh annual inspection, prepare the aircraft for departure, clean the aircraft, start the annual, swing the wings, pre-oil, oil and de-oil and conduct other repairs as necessary to fix broken non-functional equipment and to ensure flight worthiness."

31.   Plaintiff is informed and believes, and based thereon avers, that Defendant breached the Agreement when he delivered the Aircraft in a condition that was, *inter alia*, not flight worthy as agreed.  The Aircraft had significant structural, mechanical and electrical issues which made it not flight worthy and incapable of becoming flight worthy in its delivered state.

32.   Plaintiff performed all conditions, covenants, and promises required to be performed in accordance with the terms of the contract, except those obligations that it was prevented or excused from performing.

33.   As a result of Defendant's breach of the Agreement, Plaintiff has been damaged in that significant remediation was required, all at Plaintiff's expense, in order to make the Aircraft flight worthy, in an amount well in excess of the jurisdictional limits of this Court, to be proven at trial

## PRAYER

Wherefore, Plaintiff prays for judgment as follows:

## AS TO THE FIRST CLAIM FOR RELIEF

1.   For damages proximately caused by Defendant's fraudulent inducement, including but not limited to the difference between the contract price for the Aircraft

7

1    and the value of the Aircraft upon receipt, and the costs to repair the Aircraft to its

2    represented airworthy condition, in an amount of at least $380,000, and as proven at

3    trial, plus interest thereon at the legal rate until paid in full;

4          2.      For exemplary and punitive damages;

5                        **AS TO THE SECOND CLAIM FOR RELIEF**

6          3.      For   damages   proximately   caused   by   Defendant's   negligent

7    misrepresentations to Plaintiff, including but not limited to the difference between the

8    contract price for the Aircraft and the value of the Aircraft upon receipt, and the costs to

9    repair the Aircraft to its represented airworthy condition, in an amount of at least

10   $380,000, and as proven at trial, plus interest thereon at the legal rate until paid in full;

11                        **AS TO THE THIRD CLAIM FOR RELIEF**

12         4.      For damages proximately caused to Plaintiff as a result of Defendant's

13   breach of contract, including but not limited to the difference between the contract price

14   for the Aircraft and the value of the Aircraft upon receipt, and the costs to repair to

15   Aircraft to its contracted-for airworthy condition, in an amount of at least $380,000, and

16   as proven at trial, plus interest thereon at the legal rate until paid in full;

17                          **AS TO ALL CLAIMS FOR RELIEF**

18         5.      For costs of suit herein;

19         6.      For such other and further relief as this Court may deem just and proper.

20

21   DATED:  July 14, 2011               **GODES & PREIS, LLP**

22

23

24   _____

25   Joseph M. Preis
     Robert F. Muth
26   Attorneys for Plaintiff

27

28

8

1

## **DEMAND FOR JURY TRIAL**

2    Plaintiff hereby demands a jury trial on all issues in the case to which a jury

3  trial is available.

4

5  DATED:  July 14, 2011                    **GODES & PREIS, LLP**

6

7

8    _____

9  Joseph M. Preis
   Robert F. Muth

10  Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

# EXHIBIT A

*Revised 10/15/2010. Supersedes any Prior Agreement [initials]*

# AIRCRAFT PURCHASE AGREEMENT

THIS AIRCRAFT PURCHASE AGREEMENT (this *"Agreement"*), is made and entered into as of the 15th day of October, 2010, the *"Effective Date"*), by and between Pissed Away N6VC, LLC a Washington limited liability company ("*Buyer*") and Wes Stricker, an individual ("*Seller*").

## RECITALS

WHEREAS, Buyer desires to purchase from Seller and Seller desires to sell to Buyer the Aircraft (as defined below) in accordance with the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties agree as follows:

## AGREEMENT

**Section 1.** Subject Matter of Sale. Subject to the provisions of this Agreement, Seller agrees to sell and to deliver to Buyer and Buyer agrees to buy and take delivery from Seller all of Seller's right, title and interest in and to that certain GRUMMMAN TBM-3E aircraft bearing manufacturer's serial number 53139 and FAA Registration Number N6VC, as further described in the specification attached hereto as EXHIBIT A (the *"Specification"*), along with all appliances, equipment, parts, accessories, instruments, furnishings, alterations, components and other items installed in or attached thereto, all loose equipment, and all maintenance records, manuals, logbooks, diagrams, drawings and data in Seller's possession (collectively *"Aircraft Documents"*) (all of the foregoing items collectively referred to as the *"Aircraft"*).

**Section 2.** Purchase Price. All prices, amounts and payments referred to herein shall be in United States Dollars. The total purchase price for the Aircraft shall be $[680,000] (the *"Purchase Price"*), which shall be payable as follows: (a) an initial deposit of $-0- (the *"Deposit"*) to be held by **INTERNATIONAL AIRCRAFT TITLE & ESCROW, INC. ("ESCROW AGENT"), 1007 S. PENNSYLVANIA, SUITE F, OKLAHOMA CITY, OKLAHOMA 73159, PH: 405 604-9618, BANK OF AMERICA, OKLAHOMA CITY, OKLAHOMA 73118, ABA #026009593, CREDIT: INTERNATIONAL AIRCRAFT TITLE & ESCROW, ACCOUNT # 002869416202, ATTENTION: MARY MILLER:** Reference: N20853; and (b) an additional payment of $680,000 payable at Closing in accordance with Section

3 hereof. Escrow shall disburse $30,000 to C&L Aviation to pay commission due them for this sale and the remaining $650,000 to the Seller.

## Section 3. Closing, Delivery of Aircraft, etc.

3.1 Inspection. Seller agrees to make the Aircraft (including records as described in Section 1 hereof) available to Buyer to enable Buyer to perform an inspection of the Aircraft (the *"Inspection"*). Within forty-eight (48) hours of the completion of the Inspection, Buyer shall, in its sole discretion, either accept or reject the Aircraft. If Buyer rejects the Aircraft, the Escrow Agent shall promptly refund the Deposit to Buyer. If the Buyer accepts the airplane, Seller agrees to give the Aircraft a fresh annual inspection, prepare the aircraft for departure, clean the Aircraft, start the annual, swing the gear, swing the wings, pre-oil, oil and de-oil and conduct other repairs as necessary to fix broken non-functional equipment and to ensure flight worthiness.

3.2 The Closing. The consummation of the transaction contemplated by this Agreement (the *"Closing"*) shall consist of and include the completion by the parties of each and every delivery, condition or requirement under Sections 3.3 and 3.4 of this Agreement. The Closing shall occur on or before the fifth business day after Buyer's acceptance of the Aircraft in accordance with Section 3.1, such date being the *"Closing Date."* All Sellers' right, title and interest in and to the Aircraft shall pass to Buyer upon completion of the Closing.

3.3 Buyer's Deliverables; Seller's Conditions to Closing

(a) Buyer shall: (i) on or before the Closing Date, deposit with Escrow Agent the Purchase Price as set forth in Section 2; and (ii) deliver to Seller at the Delivery Location an executed Aircraft Delivery Receipt in the form and substance of EXHIBIT B attached hereto (hereinafter "EXHIBIT B"), each of which shall be released to and become property of Seller upon Seller's authorization to Escrow Agent (as defined below) to file the Federal Aviation Administration Aeronautical Center Form 8050-2 Bill of Sale ("*Bill of Sale*").

(b) Buyer or its designee shall accept possession of the Aircraft at New Century, KS (KIXD), or other mutually agreed location (the *"Delivery Location"*). Buyer shall reimburse Seller for the cost of

*N6VC* 

Aircraft Purchase Agreement                1.                                              NJ 1

the fuel required to move the Aircraft to the Delivery Location.

3.4 Seller's Deliverables; Buyer's Conditions to Closing

(a) On or before the Closing Date, Seller shall deliver to the Escrow Agent an executed Bill of Sale, together with written irrevocable instructions to file the Bill of Sale with the Federal Aviation Administration (the "*FAA*") immediately upon Seller's receipt from Buyer of the Purchase Price and EXHIBIT B.

(b) Seller shall deliver to Buyer or its designee at the Delivery Location the Warranty Bill of Sale in the form and substance set forth in EXHIBIT C attached hereto (the "*Warranty Bill of Sale*").

(c) Seller shall deliver the Aircraft to Buyer or Buyer's designee at the Delivery Location (i) with a current and valid Certificate of Airworthiness issued by the FAA, (ii) free and clear of all liens and encumbrances, and (iii) with all logbooks, flight manuals and maintenance manuals in the Seller's possession.

(d) Immediately following the Closing, Seller shall deliver to Buyer the Receipt for Funds in the form and substance set forth in EXHIBIT D attached hereto.

(e) Immediately following the Closing, Seller shall deliver to Buyer the Assignment of Warranties in the form and substance set forth in EXHIBIT E.

3.5 Cape Town Convention. In the event the Convention on International Interests in Mobile Equipment and the Protocol to the Convention on Matters Specific to Aircraft Equipment and the regulations and procedures issued thereunder are applicable to this transaction, the parties agree to promptly register as an approved user of the International Registry at its own expense in time to support a timely Closing, and each party shall appoint Escrow Agent as its professional registry user entity to accomplish the registration of the non-prospective Contracts of Sale at Closing.

3.6 Risk of Loss. Seller shall bear full risk of loss with respect to the Aircraft (the "*Risk of Loss*"), until Buyer accepts possession of the Aircraft pursuant to Section 3.3(b) of this Agreement, whereupon and thereafter the Risk of Loss shall be upon the Buyer. In the event of loss or damage to the Aircraft prior to the transfer of possession of the Aircraft, Buyer shall be entitled to terminate this Agreement.

**Section 4.** **Representations, Warranties & Limitations**

4.1 Representations and Warranties of Seller. Seller hereby represents and warrants as of the date hereof and the Closing Date as follows:

(a) Seller is the owner of the Aircraft and is authorized to convey title to the Aircraft, and that execution and delivery of the Bill of Sale shall convey to Buyer good and marketable title to the Aircraft, free of any and all liens and encumbrances.

(b) Seller has paid all taxes, duties, penalties, charges, or invoices or statements with respect to the Aircraft incurred on and before the Closing Date or, to the extent that it has not, agrees to pay any and all of the foregoing as when due.

(c) Seller is duly authorized by all necessary corporate, partnership, or other applicable action to carry on business as currently conducted, and to execute, deliver and perform and observe the provisions of this Agreement.

4.2 Representations and Warranties of Buyer. Buyer hereby warrants as of the date hereof and the Closing Date that Buyer is duly authorized by all necessary corporate, partnership, or other applicable action to carry on business as currently conducted, and to execute, deliver and perform and observe the provisions of this Agreement.

4.3 Disclaimer. Other than as expressly set forth in Section 4.1 above and in the Warranty Bill of Sale, the Aircraft is sold to Buyer on an "AS IS AND WHERE IS" BASIS. EXCEPT AS SET FORTH IN THIS AGREEMENT, SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF AIRWORTHINESS, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE AIRCRAFT, ITS DESIGN, MANUFACTURE, CONDITION, OPERATION, OR PERFORMANCE, WHETHER ARISING BY OPERATION OF LAW, COURSE OF DEALING OR USAGE OF TRADE OR OTHERWISE, AND BUYER IRREVOCABLY WAIVES AND RELEASES SELLER FROM ANY SUCH WARRANTIES. In no event shall Seller be liable for any special, indirect, consequential, or incidental damages, including, without limitation, damages for loss of use, revenues, or profits.

**Section 5.** **Third Party Warranties.** Any warranties from manufacturers, service providers, or suppliers with respect to the Aircraft that are still in

effect (other than warranties which by their terms are unassignable), and all rights thereunder shall be irrevocably assigned to Buyer at the moment of Closing and all documents evidencing same will be included within the Aircraft Documents.

*not read*

**Section 6.     Sales and Other Taxes.**

6.1  Neither the Purchase Price nor any other payments to be made by Buyer under this Agreement include the amount of any sales, use, retail, or other taxes that may be imposed by governmental authorities as a result of the sale, purchase, and/or use of the Aircraft. Buyer shall be responsible for and shall pay when due all taxes of any kind or nature whatsoever (including, without limitation, all sales, use, and retail taxes), duties, or fees assessed or levied by any federal, state, county, local, or other governmental authority imposed on Buyer, Seller, or both, as a result of the sale, purchase, delivery, registration, ownership, or use of the Aircraft, in connection with the consummation of the transaction contemplated by this Agreement, including payment of use tax in the State of Washington. Buyer shall indemnify and hold Seller harmless against all such taxes, duties or fees. Buyer's obligations under this paragraph do not apply to any taxes attributed solely to Seller's income.

**Section 7.     Notices.**  All communications and notices shall be in writing and deemed made when delivered by hand, or five (5) business days after being sent by registered mail, return receipt requested, postage prepaid, or on the next business day when sent by overnight courier or when transmitted by means of telecopy or other wire transmission (with request for assurance of receipt in a manner typical with respect to communications of that type and followed promptly with the original thereof) in each case at set forth on the signature page hereto.

**Section 8.     Miscellaneous**

8.1  Force Majeure.  Neither party shall not be liable for any failure of or delay in delivery of the Aircraft for the period that such failure or delay is due to Acts of God or the public enemy; war, insurrection or riots; fires, explosions or serious accidents; governmental priorities or allocation; or any cause beyond such party's reasonable control.

8.2  Time is of the Essence.  Unless otherwise expressly stated, time is of the essence for all events contemplated by this Agreement.

8.3  Choice of Law.  This Agreement shall be construed in accordance with, and governed by, the laws of the State of Washington without regard to conflicts of law principles.

8.4  Confidentiality.  The terms and conditions of this Agreement and all transactions, writings, discussions, and negotiations in connection with it (including, without limitation, the fact that discussions and negotiations have been conducted by the parties), shall remain strictly confidential and shall not be disclosed by either party without the prior written consent of the other party, except as required by law or to carry out the terms of this Agreement.

8.5  Failure to Deliver Aircraft.  Seller's failure to deliver the Aircraft in accordance with the terms of this Agreement shall be a breach entitling Buyer to immediate return of its deposit and reimbursement from Seller of all amounts Buyer paid in conformance to the terms of this Agreement.

8.6  Transaction Costs and Expenses.  Each party to this Agreement shall bear its own transaction costs and expenses. However, the parties agree to split evenly the Escrow Agent's fees.

8.7  Entire Agreement.  Buyer and Seller warrant that the terms and conditions of this Agreement, including all exhibits hereto, constitute the entire agreement between the parties.

8.8  Assignment.  Neither party may assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the other party.

8.9  Counterparts.  This Agreement may be fully executed in any number of separate counterparts by each of the parties hereto, all such counterparts together constituting but one and the same instrument.

8.10  Non-Waiver.  Any failure at any time of either party to enforce any provision of this Agreement shall not constitute a waiver of such provision or prejudice the right of such party to enforce such provision at any subsequent time.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have caused this Aircraft Purchase Agreement to be executed by their duly authorized representatives as of the Effective Date.

BUYER: Pissed Away N6VC, LLC

By: _____

Printed Name: David Cohen

Title: Manager

Phone: [858 451 3535]

SELLER:

By: _____

Printed Name: Wes Stricker

Title: Individual

Attn: | GRACE ALLEN
Phone: | 573- 489- 7000
Fax: | 573- 634- 7004

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| PISSED AWAY N6VC, LLC, a Washington Limited Liability Company | WILLIAM E. STRICKER, an individual |

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

2011 JUL 14 PM 2:51

County of Residence of First Listed Defendant  Boone
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Joseph M. Preis, Godes & Preis, 8001 Irvine Center Drive, #1420, Irvine, CA 92618; 949.468.0051; 949.872.2281

Attorneys (If Known)  11 CV 1563 H CAB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☒ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  **Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 28, United States Code Section 1332

Brief description of cause:
Fraud in the inducement; negligent misrepresentation; breach of contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  380,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
07/14/2011

SIGNATURE OF ATTORNEY OF RECORD
Joseph M. Preis

**FOR OFFICE USE ONLY**

RECEIPT #  28391  AMOUNT  $350  APPLYING IFP  7/14/11  JUDGE  MAG. JUDGE





CONFORM

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: <u>Unauthorized reception of cable service</u>

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS028391
Cashier ID: kdelabar
Transaction Date: 07/14/2011
Payer Name: SAN DIEGO LEGAL SUPPORT SVCS
--------------------------------
CIVIL FILING FEE
 For: PISSED AWAY V. STRICKER
 Case/Party: D-CAS-3-11-CV-001563-001
 Amount:        $350.00
--------------------------------
CHECK
 Check/Money Order Num: 102217
 Amt Tendered:  $350.00
--------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```